# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JILL ELIZABETH CALL,

    Plaintiff,

v.                                                                                                  No. CV 16-1145 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Jill Elizabeth Call's *Motion to Reverse and Remand to Agency for Rehearing, With Supporting Memorandum* (the "Motion"), (Doc. 20), filed June 15, 2017; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 22), filed August 11, 2017; and Ms. Call's *Plaintiff's Reply* (the "Reply"), (Doc. 23), filed August 28, 2017.

Ms. Call filed an application for disability insurance benefits on December 5, 2012, alleging disability beginning January 30, 2010. (Administrative Record "AR" 12). Ms. Call claimed she was limited in her ability to work due to: congestive heart failure, depression, a herniated disc in her back, arthritis in her spine, sciatica in her left leg, thyroid disease, and anxiety. (AR 180). Ms. Call's application was denied initially on May 3, 2013, and upon reconsideration on November 6, 2013. (AR 12). Ms. Call requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 19, 2015, before ALJ Eric Weiss, Jr. (AR 25). At the hearing, Ms. Call was

represented by attorney Feliz M. Martone, and Ms. Call and Sandra Trost, an impartial vocational expert ("VE"), testified. (AR 27-64).

On April 27, 2015, ALJ Weiss issued his decision, finding Ms. Call not disabled at any time between her alleged disability onset date through the date of the decision. (AR 19-20). Ms. Call requested review by the Appeals Council, (AR 6-8), which was denied, (AR 1-5), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

In her Motion, Ms. Call now argues that the ALJ erred by failing to properly: (1) evaluate Ms. Call's impairments at step three; (2) consider Ms. Call's non-severe impairments; (3) consider Ms. Call's activities of daily living, social functioning, and concentration, persistence, and pace; (4) consider the medical opinions of State Agency consultative examiner John Owen, Ph.D.; and (5) consider the physical and mental demands of Ms. Call's past relevant work. (Doc. 20 at 7-15). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in his consideration of Ms. Call's non-severe impairments and in the evaluation of Dr. Owen's opinions, the Court finds that Plaintiff's motion should be **GRANTED IN PART**.

    **I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). If substantial evidence supports the Commissioner's findings and the correct

legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. § 404.1505(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i-iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background

Ms. Call applied for disability insurance benefits due to: congestive heart failure, depression, a herniated disc in her back, arthritis in her spine, sciatica in her left leg, thyroid disease, and anxiety. (AR 180). At step one, the ALJ determined that Ms. Call had not engaged in substantial gainful activity since January 30, 2010, the alleged onset date. (AR 14).

At step two, the ALJ concluded that Ms. Call has the following severe impairments: nonischemic cardiomyopathy, mitral regurgitation, coronary artery disease, fibromyalgia, osteoarthritis of the lumbar spine and left shoulder, carpal tunnel syndrome, Palmar flexor tenosynovitis, and obstructive sleep apnea. (AR 14). The ALJ further found that Ms. Call has the following non-severe impairments: subpatellar crepitance of the knees bilaterally, hyperlipidemia, gastroesophageal reflux disease, diabetes mellitus, hypertension, obesity, depressive disorder, and anxiety disorder. *Id.* The ALJ stated that Ms. Call's non-severe impairments "have either improved within one year or are mild to moderate in nature," and that they "are amenable to control by adherence to recommended medical treatment and the proper administration of prescribed medications." *Id.* Regarding obesity, the ALJ stated that, at least one time during the alleged period of disability, Ms. Call's height and weight resulted in a BMI that placed her in a category of obesity, and that the ALJ accounted for the impacts obesity may have on her co-existing impairments. (AR 15).

The ALJ next found that Ms. Call's mental impairments "do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." *Id.* In support of this finding, the ALJ considered the mental status

5

examination conducted by Dr. Owen in April 2013. The ALJ assigned great weight to Dr. Owen's opinions that Ms. Call has no limitations or mild limitations in almost every area of mental abilities. The ALJ reasoned that these opinions are consistent with the record and are "based on thorough and precise examination grounded on trusted objective techniques." *Id.* (citing AR 323-26). The ALJ gave little to no weight to Dr. Owen's opinions that Ms. Call has moderate limitations in her abilities to attend, concentrate, and persist at tasks, stating "there is little to no indication of [Ms. Call] having difficulties in these areas." *Id.* The ALJ next considered the four functional areas for evaluating mental disorders as set out in § 12.00C of 20 C.F.R., Part 404, Subpart P, Appendix A. *Id.* at 16. The ALJ found that Ms. Call has no limitations in activities of daily living, mild limitation in social functioning, and in concentration, persistence, and pace, and no episodes of decompensation for an extended duration. Therefore, the ALJ found that Ms. Call's mental impairments are non-severe. *Id.*

At step three, the ALJ determined that Ms. Call does not have an impairment, solely or in combination, that meets or equals one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (AR 16-17). At step four, the ALJ found that Ms. Call has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). (AR 17). The ALJ found that Ms. Call can lift 20 pounds occasionally, lift or carry 10 pounds frequently (and push and pull the same), walk or stand for a total of 6 hours in an 8-hour workday, and sit for a total of 6 hours in an 8-hour workday. He further found that Ms. Call can climb ramps and stairs occasionally, but can never climb ladders, ropes, or scaffolds. Finally, the ALJ found that Ms. Call can occasionally stoop, crouch, kneel, and crawl, and can frequently engage in handling and fingering. *Id.*

6

In formulating Ms. Call's RFC, the ALJ stated he considered Ms. Call's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. § 404.1529 and Social Security Rulings ("SSRs") 96-4p and 96-7p. *Id.* The ALJ also stated he considered opinion evidence in accordance with 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. *Id.* The ALJ noted Ms. Call testified about her symptoms, and stated that, while Ms. Call's earning history "tends to lend some degree of credibility to her claim," the medical evidence does not support the intensity of her reported symptoms and limitations. *Id.* The ALJ reasoned that other evidence tends to subtract from Ms. Call's overall credibility, such as: the fact that she continues to smoke tobacco despite her documented history of heart disease; no history of mental health treatment or hospitalizations; failure to submit a function report detailing her ability to perform daily activities; her testimony that she lived independently approximately one year prior to the hearing; evidence she is not compliant with CPAP use for sleep apnea and her failure to follow up for sleep apnea since early 2014; and no statement from a treating physician supporting her allegation of total disability. *Id.* at 17-18.

In considering the medical evidence, the ALJ noted Ms. Call's treating physician, Dr. Rosa Galvez, made normal findings during neurological and respiratory examinations in September and December 2014, found that Ms. Call's BMI was consistent with her diagnosis of obesity, and found a positive Tinel's sign in Ms. Call's left wrist which is consistent with carpal tunnel syndrome. (AR 18). The ALJ stated the evidence reflects that Ms. Call has been treated conservatively with injections for the carpal tunnel. *Id.* In addition, the ALJ noted that Ms. Call was examined for

7

musculoskeletal pain in December 2014 at the University of New Mexico Health system, that her respiratory and cardiovascular examinations there were normal, and that she exhibited numbness in her upper extremities consistent with her diagnosis of carpal tunnel. *Id.* The ALJ stated that "a full musculoskeletal examination revealed no distinct nodular changes of osteoarthritis, and no changes in motor or sensory functioning were observed." *Id.* The ALJ next considered a rheumatology consultation Ms. Call underwent in November 2014, where she had a slightly reduced range of motion in her neck; tender points and positive Tinel's signs confirmed her diagnoses of fibromyalgia and carpal tunnel; respiratory and cardiovascular examinations were normal; no sensory or motor deficits were noted; deep tendon reflexes were full and symmetrical; her gait was normal; imaging of her cervical spine and lumbar spine revealed only mild degenerative changes with no spinal stenosis; and lab studies were negative for rheumatoid factor. *Id.*

Regarding Ms. Call's heart disease, the ALJ noted that studies from July 2013 revealed abnormal blood pressure in response to exercise, which suggested an increased risk for adverse events. *Id.* The ALJ further noted that during exercise testing Ms. Call demonstrated an abnormal end tidal partial pressure $CO_2$ at rest, with normal increase during exercise, and slightly abnormal VE/VC02 slope, but did not have exercise induced VT or angina. *Id.* The ALJ stated that a transthoracic echocardiogram from August 204 revealed an LV ejection fraction of 37% with mild to moderate global hypokinesis of the left ventricle, but that these tests revealed no signs or symptoms of heart failure and that Ms. Call was noted to be on an appropriate regimen of medication and her CCF class 2 angina was found to be "stable." *Id.* at 18-19.

The ALJ stated he accorded great weight to the opinion of the "State Agency examiner," because "it was accompanied by a detailed explanation, after a full review of the entirety of the medical evidence," the "medical evidence of record substantiates the agency examiner's findings, and . . . the examiner is certainly well-versed in the assessment of functionality as it pertains to the disability functions of the Social Security Act." *Id.* at 19. However, the ALJ did not state which State Agency examiner's opinion he was according great weight, and cited to (AR 75-84) which contains a Psychiatric Review Technique by Paul Cherry, Ph.D., and a Physical Mental RFC Assessment by Elva Montoya, M.D. *Id.*

The ALJ next determined that Ms. Call is capable of performing her past relevant work as an administrative clerk and general manager of a telephone facility. *Id.* The ALJ stated his conclusion is supported by the VE's testimony and is based on comparing Ms. Call's RFC with the demands of her past relevant work. *Id.* Because Ms. Call could perform her past relevant work as it is actually and generally performed, the ALJ found that Ms. Call had not been disabled at any time between her alleged onset date and the date of the ALJ's decision. *Id.*

**IV.    Analysis**

In her Motion, Ms. Call argues that the ALJ erred by failing to properly: (1) evaluate Ms. Call's impairments under the listings at step three; (2) consider Ms. Call's non-severe impairments; (3) consider Ms. Call's activities of daily living, social functioning, and concentration, persistence, and pace; (4) consider the medical opinions of Dr. Owen; and (5) consider the physical and mental demands of Ms. Call's past relevant work. (Doc. 20 at 7-15). As set forth below, the Court finds that any error by the

9

ALJ at steps two and three in this case were harmless, but the ALJ erred at step four by failing to properly consider Ms. Call's non-severe impairments and Dr. Owen's opinions.

   1. *The ALJ's Step Three Findings*

At step three of the sequential evaluation process, the ALJ must determine whether the impairments found to be severe at step two meet or equal a listed impairment; if so then the claimant qualifies for disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant has one or more impairments, the ALJ must determine "whether the combination of [the] impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(b). In making this step three determination, the ALJ must make findings supported by specific weighing of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (explaining that under 42 U.S.C. § 405(b)(1) an ALJ is required to discuss the evidence and explain why a claimant is not disabled at step three). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010 (citation omitted). However, it is the claimant's burden at step three to demonstrate which listings her impairments meet or equal, and an ALJ's error at this step is harmless if the claimant fails to meet this burden. *See Garrison v. Colvin*, 564 Fed. Appx. 374, 377 (10th Cir. 2014) (unpublished) (finding no error by the ALJ at step three where the claimant failed to state which listing or listings apply to his impairments).

Here, the ALJ stated at step three that he considered all of Ms. Call's impairments individually and in combination, but that he "can find no evidence that the

combined clinical findings from such impairments reach the level of severity contemplated in the Listings." (AR 16). The ALJ further stated "[s]ince the claimant shows no evidence of an impairment that meets or equals the criteria of a listed impairment or of a combination of impairments equivalent in severity (not in mere numbers) to a listed impairment, disability cannot be established on the medical facts alone." (AR 16-17) (citing 20 C.F.R. § 404.1520(d)). Therefore, the ALJ concluded that Ms. Call does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

In his step three analysis, the ALJ did not provide specific findings to explain his decision that Ms. Call's severe impairments do not meet or equal any of the listings. The Tenth Circuit in *Clifton* held that a conclusory step three finding such as the one here was in error because "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [the claimant's] impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion." *Clifton,* 79 F.3d at 1009; *see also Dye v. Barnhart*, 180 Fed. Appx. 27, 29, (10th Cir. 2006) (unpublished) (holding that the ALJ's discussion of the claimant's cardiac impairment was too conclusory and, therefore, beyond meaningful judicial review because it was "limited to a one sentence conclusion without any discussion of the medical evidence"). The Commissioner contends that the ALJ's step three decision is supported by the State Agency consultants who also concluded that Ms. Call's impairments do not meet or equal any of the listings. (Doc. 22 at 9). However, this is an impermissible *post hoc* rationalization because the ALJ did not state that he relied on

11

this evidence in making his step three finding. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted).

Despite the ALJ's failure to discuss the evidence or his reasons for finding that Ms. Call is not disabled at step three, Ms. Call does not state which of the listings her impairments meet or equal. Ms. Call "has the burden at step three of demonstrating, through medical evidence, that [her] impairments meet all of the specified medical criteria contained in a particular listing." *Riddle v. Halter*, 10 Fed. Appx. 665, 666-67 (10th Cir. 2001) (unpublished) (citation omitted). By failing to allege what listing or listings her impairments meet or equal, Ms. Call does not meet this burden and fails to show how the ALJ's error prejudiced her. *See Garrison*, 564 Fed. Appx. at 377 (finding no error by the ALJ at step three where the claimant failed to state which listing or listings apply to his impairments); *Roberts v. Colvin*, No. 1:13-cv-29-PMW, 2014 WL 949870, at *3 (D. Utah March 11, 2014) (unpublished) (finding that the ALJ's error at step three was harmless because the claimant failed to argue that his impairments meet or equal any particular listing and, thus, the claimant "failed to demonstrate how any such error prejudiced him"); *Drummond v. Astrue*, 895 F. Supp. 2d 1117, 1126 (D. Kan. 2012) ("Even assuming that . . . the ALJ failed to provide adequate analysis or explanation regarding his step three finding and that the finding is unsupported, [the claimant] has not alleged that he was prejudiced by the error, because he does not say

what Listing, if any, his condition meets or medically equals."). Therefore, the Court finds that the ALJ's error at step three is harmless.

### 2. *The ALJ's Consideration of Ms. Call's Non-Severe Impairments*

Ms. Call next contends that the ALJ failed to properly consider her non-severe impairments. (Doc. 20 at 7-9). Because the ALJ found that Ms. Call's non-severe impairments were mild to moderate in nature, Ms. Call contends that he "should have found them to be severe, or at the very least consider[ed] their effects in the RFC." (Doc. 20 at 7-8). In response, the Commissioner notes that the ALJ stated that he considered the limiting effects of all of Ms. Call's impairments, including her non-severe impairments, in determining her RFC. (Doc. 22 at 4). The Commissioner also argues the ALJ relied on evidence in the record that showed Ms. Call could control her non-severe impairments by adherence to recommended medical treatment and the use of prescribed medications. *Id.* at 5-6.

At step two, the ALJ considers a claimant's impairments to determine whether they are severe, which is defined as an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At this step, the claimant's burden is *de minimus*, and "only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (citations omitted). The claimant need only establish—and the ALJ need only find—one severe impairment to avoid a denial of benefits at step two. *See Oldham v. Astrue*, 509 F.3d 1254, 1256-67 (10th Cir. 2007). Therefore, "the failure to find a particular impairment severe at step two

13

is not reversible error when the ALJ finds at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

Here, the ALJ concluded at step two that Ms. Call has several severe impairments (nonischemic cardiomyopathy, mitral regurgitation, coronary artery disease, fibromyalgia, osteoarthritis of the lumbar spine and left shoulder, carpal tunnel syndrome, Palmar flexor tenosynovitis, and obstructive sleep apnea), and several non-severe impairments (subpatellar crepitance of the knees bilaterally, hyperlipidemia, gastroesophageal reflux disease, diabetes mellitus, hypertension, obesity, depressive disorder, and anxiety disorder). (AR 14-15). Because the ALJ found that Ms. Call has at least one severe impairment, and proceeded in the sequential evaluation process, any error by the ALJ in finding these additional impairments non-severe at step two is harmless.

Nevertheless, the ALJ was still required to consider the limiting effects of all of Ms. Call's impairments—including those that are not severe—in determining her RFC at step four. 20 C.F.R. § 404.1545(e) (explaining that an ALJ must consider the limiting effects of non-severe impairments in determining a claimant's RFC); SSR 96-8p,1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."); *see Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) (explaining that an ALJ's conclusion that a claimant's impairments are not severe at step two "does not

mean the omitted impairment simply disappears from his analysis," and that "[i]n determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems severe and those not severe").

At step four the ALJ did not discuss any of Ms. Call's non-severe impairments other than noting that she has no history of mental health treatment or hospitalizations despite her reported mental health conditions. (AR 17-18). The Commissioner argues that the Court should take the ALJ at his word when he states that he considered the limiting effects of all of Ms. Call's impairments in determining her RFC. (Doc. 22 at 4) (citing AR 15). However, the record contains evidence that Ms. Call was being treated for depression, anxiety, and diabetes, (AR 226-27, 354, 491), and she testified that her depression and anxiety affect her ability to work and that her diabetes causes blurred vision, neuropathy in her feet, and numbness and burning in her toes, (AR 37-38, 42-44, 54). The ALJ did not address this evidence, and did not provide an explanation or support from the record for rejecting it, which is legal error. *See* SSR 96-8p, at *7 (the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"); *Clifton*, 79 F.3d at 1010 (an ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

The Commissioner further notes that the ALJ stated Ms. Call's non-severe impairments could be controlled by adherence to recommended medical treatment and the proper administration of prescribed medications, and that Ms. Call has no documented presence of neuropathy or end organ damage related to her diabetes.

(Doc. 22 at 5) (citing AR 14). These statements by the ALJ were made at step two, and not in the ALJ's step four RFC determination, and the Tenth Circuit has explained that an ALJ may not simply rely on his step two findings to conclude at step four that a claimant has no limitations based on her non-severe impairments. *See Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013) (finding that the ALJ's reliance on his step two findings to conclude at step four that the claimant had no limitation based on her mental impairments "was inadequate under the regulations and the Commissioner's procedures"); *see also Suttles v. Colvin*, 543 Fed. Appx. 824, 826 (10th Cir. 2013) (unpublished) (finding no error in the ALJ's RFC determination where the ALJ's step two and step four assessments could be read in combination to conclude that the ALJ adequately considered the claimant's mental impairments). Since the ALJ did not discuss Ms. Call's non-severe impairments in making his RFC determination, the Court cannot rely solely on the ALJ's reasoning at step two to support his findings at step four.

In addition, the ALJ does not provide any support from the record for his statements that Ms. Call's non-severe impairments can be controlled and that she has no documented damage related to her diabetes. While the Commissioner provides citations to evidence in the record showing that Ms. Call's diabetes was uncomplicated and improving with medications, that she had no sensory or motor deficits in her extremities, and that Ms. Call stated that her depression and anxiety were improving with medication, (Doc. 22 at 5-6), the ALJ did not cite to any of this evidence in his decision. The Commissioner's attempt to supply this evidence is again an impermissible *post hoc* rationalization. *See Robinson*, 366 F.3d at 1084.

Based on the foregoing, the Court finds that the ALJ failed to properly consider Ms. Call's non-severe impairments in his RFC determination. While the ALJ provided a limited discussion at step two of Ms. Call's non-severe impairments, the ALJ did not rely on evidence in the record and failed to explain how he considered and resolved inconsistencies in the evidence. *See* SSR 96-8p, at *7 (the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). Therefore, the Court finds that the ALJ failed to comply with § 404.1545(e) and SSR 96-8p by not adequately considering the limiting effects of Ms. Call's non-severe impairments in making his RFC determination.

### 3. *The ALJ's Consideration of Ms. Call's Activities of Daily Living, Social Functioning, and Concentration, Persistence, and Pace*

Next, Ms. Call contends the ALJ failed to properly evaluate her activities of daily living, social functioning, and concentration, persistence, and pace. (Doc. 20 at 9-11). Specifically, Ms. Call objects to the ALJ's findings that she has no limitations in activities of daily living, and that she is only mildly limited in social functioning and in concentration, persistence, and pace. *Id.*

Under 20 C.F.R. § 404.1520a, when a claimant has a medically determinable mental impairment it must be evaluated at step two by rating the degree of functional limitation in four broad functional areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). After rating the degree of functional limitation in each area, the ALJ then determines the severity of the mental impairment. *Id.* § 404.1520a(d). As explained above, however, any error at step two is harmless if the ALJ finds at least one severe impairment and proceeds to the next step of the sequential evaluation process. *See*

*Allman*, 813 F.3d at 1330. Moreover, the criteria used at steps two and three to evaluate a claimant's mental impairments are "not an RFC assessment," and "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." SSR 96-8p, at *4. Therefore, since the ALJ's findings regarding Ms. Call's limitations in daily living, social functioning, and concentration, persistence, and pace, were made at step two, and the ALJ found that Ms. Call has at least one severe impairment and proceeded to step three, any error by the ALJ as to these findings is harmless.

### 4. *The ALJ's Consideration of Dr. Owen's Opinions*

Ms. Call contends that the ALJ failed to properly evaluate the medical opinions of State Agency consultative examiner, Dr. Owen. (Doc. 20 at 11-13). Dr. Owen evaluated Ms. Call in April 2013, and diagnosed her with a depressive disorder and a mood disorder. (AR 324). Dr. Owen further found that Ms. Call has moderate limitations in her abilities to attend, concentrate, and persist at tasks. (AR 325). The ALJ considered these opinions at step two, and stated that Ms. Call's "mental impairments of depressive disorder and anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." (AR 15). The ALJ then stated he gave little to no weight to Dr. Owen's opinions that Ms. Call has moderate limitations in her abilities to attend, concentrate, and persist at tasks because "there is little to no indication that Ms. Call has difficulties in these areas." *Id.* However, the ALJ gave great weight to Dr. Owen's opinions that Ms. Call has either no difficulties or mild difficulties in her other mental

18

abilities. *Id.* The ALJ did not address Dr. Owen's opinions in his step four findings, and these limitations are not accounted for in the ALJ's RFC determination.

The Commissioner contends that the ALJ provided sufficient reasons explaining why he rejected portions of Dr. Owen's opinions. (Doc. 22 at 10-11). As explained above, there is a difference between evaluating the severity of mental limitations at steps two and three of the sequential evaluation, and in assessing mental limitations in the RFC assessment at step four. SSR 96-8p, at *4 (explaining that the criteria used at steps two and three to evaluate a claimant's mental impairments are "not an RFC assessment," and "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment"). While the Tenth Circuit has held that courts can consider an ALJ's assessment of medical evidence at step two to supplement the ALJ's step four findings, here the ALJ made no step four findings regarding Ms. Call's mental limitations and did not discuss Dr. Owen's opinions at this step. *See Wells*, 727 F.3d at 1068 (finding that the ALJ's reliance on his step two findings to conclude at step four that the claimant had no limitation based on her mental impairments "was inadequate under the regulations and the Commissioner's procedures"); *see also Suttles*, 543 Fed. Appx. at 826 (finding no error where the ALJ found at step two that the claimant's mental impairments were not severe and the ALJ discussed evidence relating to the claimant's mental impairments at step four). Therefore, the Court finds that the ALJ erred in failing to address Dr. Owen's opinions in his RFC determination. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment); *see also* SSR 96-8p at *7 ("The RFC

19

assessment must always consider and address medical opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.").

V. **Conclusion**

For the reasons stated above, the Court finds that the ALJ failed to properly consider Ms. Call's non-severe impairments and Dr. Owen's opinions in making his RFC determination. The Court does not decide the issue of whether the ALJ properly considered the physical and mental demands of Ms. Call's past relevant work because that claim may become moot upon remand.

**IT IS THEREFORE ORDERED** that Ms. Call's *Motion to Reverse and Remand to Agency for Rehearing, With Supporting Memorandum*, (Doc. 20), is **GRANTED IN PART**, and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE